IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TAMARA GRAVELY, et al.**, | : | |
| *Plaintiffs*, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 19-5409 |
| | : | |
| **PETROCHOICE, LLC**, | : | |
| *Defendant*. | : | |

**MEMORANDUM**

**JONES, II   J.**                                                        **February 26, 2021**

## I.      INTRODUCTION

Plaintiffs Tamara Gravely ("Plaintiff Gravely") and Odell Bradley, Jr. ("Plaintiff Bradley")

brought suit against Defendant PetroChoice, LLC ("Defendant"), alleging an unlawful failure to

pay them and other similarly situated individuals overtime compensation pursuant to the

requirements of the Fair Labor Standards act ("FLSA"), 29 U.S.C. § 201, et seq., and the

Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.100, et seq.  Compl., ECF No. 1, ¶

1.  Just before the parties' discovery on class certification was finalized, Plaintiffs filed the present

Motion to Proceed as a Collective Action and Facilitate Notice Under 29 U.S.C. § 216(b) (ECF

No. 18) [hereinafter Motion], and Defendant submitted a Response in Opposition (ECF No. 19).

For the reasons set forth herein, Plaintiff's Motion is granted.

## II.      FACTUAL BACKGROUND

Defendant is an employer that sells and distributes engine and industrial lubrication-related

products, as well as certain chemicals and cleaners to a range of industries.  Declaration of

Employee Ryan Muth [hereinafter Muth Decl.] ¶ 2.  Plaintiff Gravely and Plaintiff Bradley, are

former, non-exempt hourly employees who worked for Defendant.  Plaintiffs bring the present suit

on behalf of themselves and all Prospective Class Members.  To date, there has been one opt-in

Plaintiff, Tarika Wooten [hereinafter Plaintiff Wooten].  Plaintiffs define Prospective Class

Members as those who, within the past three years, are/were employed by Defendant in the non-exempt, hourly positions of Administrative Assistant ("AA"), Billing Specialist and/or Account Billing Specialist ("BS"), and/or Accounts Payable ("AP").  Compl. ¶¶ 2-4, 17.

In all of these positions, Prospective Class Members' primary job responsibilities include providing data entry, sending/receiving correspondence, phone conversations, and routine clerical work.  *Id.* at ¶ 46.  Because Plaintiffs and Prospective Class Members were/are hourly employees, they were/are subject to Defendant's meal break policy.  This policy is at the heart of Plaintiffs' complaint.

### A.   Defendant's Meal Break Policy

As noted by Plaintiffs and in the employee handbook, Defendant's meal break policy states the following:

> Non-exempt employees who are scheduled to work six hours per day or more are provided with a mandatory 30-minute unpaid meal break.  Such employees' supervisor is responsible for approving the scheduling of this time based on workflow.  The meal break will generally commence no later than five hours after the beginning of the work shift.  Unless otherwise directed in writing by the Vice-President of Human Resources, all non-exempt employees should not work during, and therefore are required to punch out while taking, their mandatory 30-minute meal break...
>
> Non-exempt employees may work during their lunch break (i.e. eat lunch while they work) if—and only if—they receive the prior, written permission of their supervisor due to emergent circumstances that require such accommodation.  Should that occur, the employee will be paid for all working time during the meal period and, in the event that a non-working break is required by applicable law, the Company will make alternative arrangements for such a break.

Defendant's Employee Handbook Meal Break Policy, Attached to Mot. as Exhibit Q.

Based upon this policy, Defendant expected employees to clock in and out for their meal breaks so that their time records would only reflect the hours the employees actually worked.  Muth Decl. at ¶ 5.  However, when Defendant discovered hourly employees were not punching out and in for lunch, it started utilizing an automatic deduction system where a 30-minute lunch period

would automatically be deducted from an employee's total hours for the day. *Id*. at ¶ 7.  Notably, the auto-deduction only occurred when an employee's timecard showed he or she worked six hours or more without a punch out (many times indicating that he or she forgot to punch out for lunch). *Id*.  However, if an employee worked through any part of his or her lunch period, Defendant's policy required the employee to notify his/her supervisor who would then correct the timecard so the employee could be appropriately compensated. *Id*.

During the relevant time period, Defendant recognized that whether Plaintiffs and Potential Class Members actually punched out for meals relied not only on how closely each followed the meal break policy but also on who was their supervisor. *Id*. at ¶¶ 9-10.  Certain supervisors were more cognizant of following up with Plaintiffs and Potential Class Members who did not punch out for meal breaks, while others relied on the automatic meal break deduction process. *Id*.

Though Defendant states its meal break and time recordation policies were in place to ensure all employees were accurately compensated, Plaintiffs claim they and other similarly situated individuals routinely performed work during their meal periods on a near-daily basis in order to maintain Defendant's "quota" and/or billing requirements.[1]  Compl. ¶¶ 53-54.  Thus, even if Defendant's meal break policy was facially appropriate, how it was applied in practice is at the heart of Plaintiffs' suit.

**B.   Hourly Employees' Actual Practice of Working Through Meal Breaks**

Plaintiffs claim that even when employees regularly worked through meal breaks, thirty (30) minutes were still deducted from their timecards.  One such example of this practice was Plaintiff Odell Bradley.  When looking at a sample of Plaintiff Bradley's timecards, he stayed clocked-in for almost every shift without taking a meal break. *See* Plaintiff Bradley's Timecards,

---

[1] Defendant disputes that it uses a "quota" system and, even if it did, argues that this system would not necessarily indicate the non-payment of wages owed.  Muth Decl. at ¶ 13.

Attached to Plaintiffs' Motion as Exhibit B.  However, even though Plaintiff Bradley stayed clocked in for and worked through his lunch breaks, as per Defendant's practice, his timecards were continually reduced thirty (30) minutes.  Other employees similarly recount that even when they clocked out for a meal period, they regularly worked through that "break" without receiving compensation.  *See* Plaintiff Gravely's Answers to Interrogatories, Attached to Motion for Conditional Class Certification [hereinafter Motion] as Exhibit S [hereinafter Ex. S], at No. 10; Plaintiff Wooten's Answers to Interrogatories, Attached to Mot. as Exhibit T [hereinafter Ex. T], at Nos. 4 and 10; Gravely Decl. at ¶ 3; Wooten Decl. at ¶ 5.

Plaintiffs made Defendant aware that its practices diverted from its policies of compensating employees for all work performed.  On at least one occasion, Plaintiff Bradley orally complained to his former supervisor, Terri Norton ("Ms. Norton"), to put her on alert of the missed compensation.  Ms. Norton responded, "that is your loss," and at least two witnesses recount hearing this response.  Ex. S at Nos. 7-8; Ex. T at Nos. 6-8.  Even when Ms. Norton reached out to Defendant's Human Resources Department in Illinois, she was informed that "whether [an employee] take[s] five (5) minutes or fifteen (15) minutes of [a] break, the system will automatically deduct for the full thirty (30) minutes."  Plaintiff Bradley's Answers to Interrogatories, Attached to Mot. as Exhibit R, Nos. 6-8.

Even after Defendant was made aware that Plaintiffs and Prospective Class Members were working through their meal breaks, Plaintiffs note that employees continued to not receive an uninterrupted thirty (30) minute meal period and were not compensated for all of their work. Plaintiffs bring suit today on behalf of themselves and Prospective Class Members alleging Defendant violated FLSA and PMWA by unlawfully denying them compensation and overtime compensation due to Defendant's policy and practice of: (1) automatically deducting thirty (30)

minutes each workday for meal breaks when Plaintiffs and Prospective Class Members continued to perform work; (2) failing to accurately track and compensate Plaintiffs and Class Members for all time spent performing compensable work; (3) failing to compensate Plaintiffs and Class Members for all hours performing compensable work; and (4) failing to compensate Plaintiffs and Class Members overtime compensation at 1.5 times their regular rate of pay for hours worked in excess of forty (40) in a work week.[2]  Compl. ¶ 17.

### III.   PROCEDURAL HISTORY

On November 18, 2019, Plaintiffs filed the Complaint against Defendant.  ECF No. 1.  On December 23, 2019, Ms. Wooten opted in as another Plaintiff in this case; she is the only opt-in as of date.  ECF No. 5. Defendant filed an Answer on January 24, 2020.  ECF No. 9.  At the request of the parties, the Court established a discovery schedule providing for three (3) months of class certification-focused discovery on March 9, 2020.  ECF No. 16.  The parties served and answered written discovery, and, on June 2, 2020, Plaintiffs filed the present Motion for Conditional Class Certification (ECF No. 18), seeking conditional class certification based upon the following definition of persons:

> All persons presently or formerly employed by Defendant during the past three (3) years in the position of Administrative Assistant ("AA"), Billable Specialist and/or Account Billing Specialist ("BS"), and/or Accounts Payable ("AP"), or in positions with substantially similar job duties who were paid on an hourly basis and subject to Defendant's unpaid meal break policy.

Mot. 3.  Defendant submitted a response in opposition on June 16, 2020 (ECF No. 19).  This matter is now ripe for review.

---

[2] Defendant suggests that all of these claims relate back to Defendant's meal break policy.  *See* Defendant's Response in Opposition, 21.  While the Court agrees with Defendant that this is the way Plaintiffs' Complaint presently reads, at the present stage, the Court will not evaluate the merits of Plaintiffs' claims.

## IV.    STANDARD OF REVIEW

"Enacted in 1938, the FLSA, 29 U.S.C. § 201 et seq., was designed to aid the unprotected, unorganized, and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011) (citation omitted).  FLSA "requires employers to pay their employers for all work done."  *Reich v. Brenaman Elec. Serv.*, No. 95-3737, 1997 WL 164235, at *2 (E.D. Pa. Mar. 28, 1997).

Under FLSA, employees may file suit as a collective action on behalf of themselves and others who are "similarly situated."  29 U.S.C. § 215(b).  Contrary to traditional class actions, allegedly wronged employees must opt-in to the collective action.  *Gordon v. Maxim Healthcare Servs., Inc.*, No. 13-7175, 2014 WL 7009469, at *1 (E.D. Pa. Dec. 11, 2014).  Before Plaintiffs may begin to opt-in, District Courts must first decide if the case should move forward as a class action.

In making this determination, the Third Circuit uses a two-step approach.  *See Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 536 (3d Cir. 2012).  For the first step, "the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff[s]."  *Symczyk*, 656 F.3d at 192.  "If the plaintiff[s] carr[y their] burden at this threshold stage, the court will 'conditionally certify' the collective action for the purposes of notice and pretrial discovery."  *Id*.  A conditional certification "is not really a certification."  *Zavala*, 691 F.3d at 536.  "Rather, it is 'only the district court's exercise of [its] discretionary power...to facilitate the sending of notice to potential class members' and 'is neither necessary nor sufficient for the existence of a representative action under FLSA.'"  *Sawyer v. Health Care Sols. at Home, Inc.*, No. 16-5674, 2018 WL 1959632, at *6 (E.D.

Pa. Apr. 25, 2018) (quoting *Symczyk*, 656 F.3d at 193).  For the second step in this analysis, "[a]fter

discovery, and with the benefit of a much thicker record than it had at the notice stage, [the]

court...makes a conclusive determination as to whether each plaintiff who has opted[-]in to the

collective action is in fact similarly situated to the named plaintiff[s]." *Symczyk*, 656 F.3d at 193

(citation omitted).  If Plaintiffs meet this burden, "the case may proceed to trial as a collective

action." *Id*.  In deciding Plaintiffs' present Motion, the Court is only in the first stage of the

conditional certification analysis.

The first step in the conditional certification analysis is a "fairly lenient standard." *Camesi*

*v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (quoting *Zavala*, 691 F.3d at

535).  Plaintiffs must make a "modest factual showing that the proposed recipients of opt-in notices

are similarly situated." *Symczyk*, 656 F.3d at 193.  This evidence must be "'beyond pure

speculation,' of a factual nexus between the manner in which the employer's alleged policy

affected [them] and the manner in which it affected other employees." *Id*.  However, the Court

does not evaluate the merits of the Plaintiffs' case when ruling on a motion for conditional

certification.  *Belt v. P.F. Chang's China Bistro, Inc.*, No. 18-3831, 2020 WL 3829026, at *3 (E.D.

Pa. July 8, 2020).  If Plaintiffs carry their burden at this point, "the court will 'conditionally certify'

the collective action for the purposes of notice and pretrial discovery." *Id*. at 192-193.

**DISCUSSION**

Plaintiffs move for conditional certification for a class compromised of those who, within

the past three (3) years, worked for Defendant as AAs, BSs, Aps, or others with substantially

similar job duties paid on an hourly basis and were subject to Defendant's meal break policy.

Defendant responds that such a finding would be inappropriate because, despite having undergone

three months of discovery, Plaintiffs have failed to provide sufficient evidence to suggest that other

Potential Class Members were not compensated for time they worked on meal breaks and were, thus, similarly situated to Plaintiffs.  Alternatively, Defendant suggests request this Court to allow the parties a reasonable amount of time to confer over the content of any class certification notice given the stated flaws in Plaintiffs' present proposed notice.  Having reviewed all the pleadings at this preliminary stage, the Court finds the Plaintiffs have met their burden for conditional class certification, and the Court also grants Defendant's request for additional time to confer over the content of the class certification notice.

### A.  Plaintiffs have shown sufficient evidentiary support for conditional certification.

Defendant argues that Plaintiffs have not made a modest factual showing that proposed collective class members are similarly situated because Plaintiffs' motion is based largely on their own declarations, which does not show that other employees were not compensated due to the meal break deductions.  The Court disagrees.

Plaintiffs' declarations provide sufficient details that, if true, would tend to show that other proposed collective class members worked through meal breaks without compensation and were, thus, similarly situated to Plaintiffs.  Specifically, Plaintiff Gravely and opt-in Plaintiff Wooten both recounted how they did not receive full compensation for the work they performed during meal breaks due to Defendant's automatic-deduction policy for meal breaks.  Gravely Decl. at ¶¶ 5-7; Wooten Decl. at ¶¶ 7-8.  Additionally, when Plaintiff Bradley attempted to alert his supervisor, Ms. Norton, that he was not being compensated for work her performed on his meal breaks, both Plaintiff Gravely and Plaintiff Wooten heard Ms. Norton respond, "that is your loss."  Ex. S at Nos. 7-8; Ex. T at Nos. 6-8.  Without stating specifics, both Plaintiff Gravely and Plaintiff Wooten's statements mention that other AAs, BSs, and Aps worked a similar work schedule as

Plaintiffs and were subject to the same automatic meal deduction policy.  Gravely Decl. at ¶ 3; Wooten Decl. at ¶ 5.

Defendant provides no evidence to contradict that other hourly employees did not work on their meal breaks or were fully compensated for any amount of time they spent working on a break. "Plaintiffs' claims are based upon a common policy of deducting meal-break time that is reflected in Defendant's Employee Handbook...Courts [within this District] in similar FLSA meal-break cases have conditionally certified classes based largely on declarations showing the existence of an automatic deduction policy, and the same result obtains here." *Galt v. Eagleville Hosp.*, 238 F. Supp. 3d 733, 737 (E.D. Pa. 2017). *See also*, *Holley v. Erickson Living*, No. 11-2444, 2012 WL 1835738, at *5 (E.D. Pa. May 21, 2012) ("Plaintiff's proffered declarations, along with the documentary evidence that Defendants had a blanket policy of a thirty[-]minute unpaid meal break that was automatically deducted from each employee's pay, are sufficient for conditional certification of Plaintiff's collective action[.]"); *Williams v. Owens & Minor, Inc.*, No. 09-742, 2009 WL 5812596, at *3 (E.D. Pa. Oct. 9, 2009) (Granting conditional class certification where, despite testimony contradicting Plaintiff's claims, there was evidence of an automatic meal-break pay deduction policy and proffered statements that Plaintiffs were not compensated for work performed on their meal breaks).

Though the Court takes note of Defendant's policy requiring employees to notify their supervisors if they were going to work through a meal break, at this stage in the proceedings, "it is not appropriate to adjudicate plaintiffs' claims on the merits." *Williams*, 2009 WL 5812596, at *3.  The Court finds that Plaintiffs have made a sufficient factual showing to warrant a conditional certification of the proposed class.

**B. Defendants' request that the parties have a reasonable amount of time to discuss the notice to potential class members with Plaintiffs is granted.**

Because this Court has found sufficient support to grant Plaintiffs' conditional class certification, this Court will now address the merits of Defendant's concerns regarding the notice Plaintiffs will be providing to prospective class members. Defendant disputes that Plaintiffs' proposed notice to Potential Class Members is inadequate for the following reasons:

- It does not inform potential opt-ins of their right to retain their own counsel;
- It does not provide contact information for defense counsel;
- It has multiple mis-statements of fact in the "Description of the Lawsuit" section;
- The "No Retaliation Permitted" section goes beyond a general "no retaliation statement" to a *de facto* attorney solicitation statement, bordering an instruction that Potential Class Members "should" contact Plaintiff's counsel to handle any claims; and;
- Posting the notice in multiple places throughout the facility could potentially be disruptive to Defendant's operations and be ineffective given the number of Potential Class Members currently working from home.

Defendant's Response in Opposition, ECF No. 19, 17-19.

It is in the best interest of both the parties and the Court to assure the class notice is appropriate before being widely disseminated amongst Prospective Class Members. *See Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989) ("Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed."); *Galt*, 238 F. Supp. 3d at 738 (Requiring the parties to meet before notice is distributed amongst prospective class members where the plaintiffs needed to revise a collective class definition). Accordingly, this Court will require the parties to confer and resolve and issues with the proposed notice before it may be distributed amongst Prospective Class Members.

## C.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Conditional Class Certification is granted, but the parties must meet and resolve any issues with the class notice before it may be distributed to Prospective Class Members.  An appropriate Order follows.

BY THE COURT:

*/s/ C. Darnell Jones, II*
_____
C. DARNELL JONES, II      J.